ALBERT R. HEATH and others, Administrators, &c., *vs.*
GRAHAM H. GRENELL, Administrator, &c.

A partial payment upon a promissory note past due, by the administratrix of
one of the makers, a portion of which payment is from assets of the estate,
if made before the statute of limitations has run against the note, saves the
obligation from the operation of the statute up to that time. And this,
although the payment was the act of one of two administrators, alone, with--
out the consent of the other.

*Aliter*, where the payment is made after the statute has run against the note.
In that case, the question of the right of one administrator to revive and
restore a stale demand would arise; and *it seems* such a demand cannot be
revived either by the promise, or the act, of payment of one of several
administrators.

An administratrix making a payment upon a note after the statute of limita-
tions has run against it, not out of the assets of the estate, but out of her
own funds, will not be deemed as acting in her capacity of administratrix,
even though she directs the payment to be made upon that specific debt;
nor can such payment be construed into a promise, or as indicating an in-
tention, to revive, or continue, the demand against the estate.

Any payment upon such a note, made by the administratrix with her own
money, cannot bind the estate, or affect it in any way, any more than if it
had been the act of a stranger.

Where an administratrix directed her agent to pay a certain sum on her in-
testate's debts, out of money of her own, giving no specific direction to pay
a particular demand, or any part of it; and the agent, in the exercise of his
own discretion in distributing the fund, made a partial payment upon that
demand; *Held* that the general direction to the agent could not be construed
into a promise, or intention, to continue that particular demand. And that,
as the payment was not made from the assets of the estate, and the adminis-
tratrix was not acting in her representative capacity in making, or ordering,
such payment, it could have no bearing against the estate.

The presentation and allowance of a claim, under the statute, (2 *R. S.* 88, § 34,)
are quite different from a voluntary partial payment by one of several ad-
ministrators, from assets in his hands; not only in the form and nature of
the act, but in its legal consequences. The former is a proceeding under the
statute, by which a claim presented and allowed may be deemed as adjusted,
and its proportional share of the assets appropriated to its payment. The
latter is only evidence of a new promise, from the date of which the six
years limitation commences to run anew, and does not prevent the statute
from commencing to run, and continuing to run, from that time.

APPEAL, by the plaintiffs, from a judgment entered
upon the report of a referee.

Heath *v.* Grenell.

The action was brought by the plaintiffs, as administrators of Jacob Heath, deceased, against the defendant, as administrator of Wm. Grenell, deceased, upon a promissory note made by the defendant and his intestate. The only defense to the claim was the statute of limitations.

The action was referred to a referee, who found the following facts :

1st. That on the 19th of March, 1853, William Grenell and Graham G. Grenell made and delivered to Jacob Heath, their promissory note, dated that day, for $500, with interest, payable six months from date, to Jacob Heath, or bearer, for value received.

2d. That there was paid on this note on the 7th day of October, 1853, $17.50, and on March 19th, 1854, $17.50, being for interest in full to that date, and on the 16th of Sept. 1854, $17.50, the two latter payments being made by the said William Grenell.

3d. That William Grenell died May 24th, 1859, and letters of administration upon the estate were duly issued on the 11th of August, 1859, to Graham G. Grenell and Charlotte Grenell, the latter being the widow of the said William, and said Charlotte died in the fall of 1864.

4th. That on the 17th of January, 1860, said G. G. Grenell, as administrator &c. of said William, paid and indorsed upon said note $36.37, a portion of which payment was assets of the estate of said deceased.

5th. That prior to the 21st of April, 1864, upon a sale under a mortgage foreclosure of certain real estate of said deceased, said Charlotte Grenell became the purchaser, and afterwards sold the same at an advance, and the proceeds of such sale, after deducting the amount paid by her, she directed her son-in-law, N. M. Wardwell, to pay upon the debt of said deceased ; said surplus was about $1000, and there was no evidence of any specific direction by Mrs. Grenell to Wardwell to pay upon the debt in suit, or that she acted as administratrix in the matter.

6th. That said Wardwell, in pursuance of this direction, paid upon this note, on the 21st of April, 1864, $329.62, such payment being in a check for $400 on Hungerford's Bank; signed Charlotte Grenell, by N. M. Wardwell.

7th. That said Jacob Heath died May 19th, 1867, and letters of administration upon his estate were issued to the plaintiffs May 27th, 1867. The agreement to refer this claim was filed July 11th, 1868, and order of reference entered January 20th, 1869.

As matter of law, the referee found:

1. That the payment by Wardwell was not such a payment as would prevent the running of the statute of limitations.

2. That more than six years having elapsed between the payment of January 17th, 1860, and the death of said Jacob Heath, and more than seven years and a half between the issuing of letters of administration on the estate of William Grenell and the death of said Heath, this action could not be maintained.

He therefore ordered judgment in favor of the defendant, against the plaintiffs, dismissing the claim of the plaintiffs, and for such costs as are allowed by law in such cases. Judgment was entered accordingly.

*L. J. Dorwin,* for the appellants. .

I. Executors and administrators hold the property of their testators, or of the intestate, in their hands, in trust for the payment of debts and legacies, and for the application of the surplus according to the will of the testator or the statute of distributions, and consequently the same relations exist, and the same principles govern the duties, rights and liabilities, as control and exist between all other trustees and their beneficiaries or *cestuis que trust.* (*Tiffany & Bullard on Trusts and Trustees,* 483. *Story's Equity Jur.* § 532, 533, 534. *Buckhout* v. *Hunt,* 16 *How. Pr.* 407.)

II. The statute of distributions declares who are the ben-

Heath *v.* Grenell.

eficiaries in the residue of the estate after the payment of debts.; a creditor becomes such beneficiary when his claim is established as a valid and subsisting claim against the estate, and upon his claim being so established, all the relations exist between him and the administrator as exist between any other trustee and his *cestui que trust*, until such claim is satisfied and the trust ended.

III. It is made, by statute, the duty of the administrator to examine and pass upon the validity of every claim so presented, and upon its allowance, the creditor becomes a beneficiary, and remains so until such claim is disputed or discharged; if he disallows such claim, then its validity must be established by an action at law, or by a reference under the statute; and when so established, it is on an equality with a claim, the validity of which has been admitted by the administrator. The sole object of an action against an administrator, or of a referee, is to establish the validity of the claim. A judgment in either case no more concludes the heir-at-law than the admission of its validity by the administrator. (*Buckhout* v. *Hunt*, 16 *How. Pr.* 407.)

IV. The indorsement made upon the note, by and in the handwriting of Graham G. Grenell, one of the administrators, and the receipt given on the 17th of January, 1870, is a full and unqualified admission of the validity of the claim founded upon such note. (*Johnson* v. *Corbett*, 11 *Paige*, 265. *Gansevoort* v. *Nelson*, 6 *Hill*, 389.) There is no pretense that this claim was outlawed at that time.

V. Several co-administrators or co-executors are, in law, but one person, representing the testator or intestate; and the acts done by one in reference to the estate, are acts done by all. (*Murray* v. *Blatchford*, 1 *Wend.* 583, 616, 617. *Wheeler* v. *Wheeler*, 9 *Cowen*, 34. *Jackson* v. *Robinson*, 4 *Wend.* 436, *citing* 2 *Ves.* 267; *Toller*, 324. *Douglass* v. *Satterlee*, 11 *John.* 16. *Gardner* v. *Miller*, 19 *id.* 188. *Stuyvesant* v. *Hall*, 2 *Barb. Ch.* 151.) That one of several

co-adminstrators has power to bind the estate, cannot be questioned, although he may not have power to bind his co-administrator.

VI. There is nothing in this case to show that Charlotte Grenell, as co-administrator, objected to the allowance of this claim. In the absence of all proof to the contrary, her consent to such allowance should be presumed.

VII. This note having been admitted as a valid claim against the estate of Wm. Grenell, deceased, on the 17th of January, 1860, Jacob Heath, as the owner thereof, became a beneficiary of said estate; and the note never having been fully paid, and the estate never having been administered, he remained such beneficiary until his death, on May 19, 1867, and on May 27, 1867, was succeeded by the appellants as his personal representatives.

VIII. After the allowance of the claim, Jan. 17th, 1860, until the agreement to refer, July 11, 1868, the statute of limitations did not begin to run; the lapse of time was no bar to the appellant's relief. (*Story's Eq. Jurisp.* § 1520. *Tiffany & Bullard on Trusts and Trustees,* 715 to 719.) In this case the estate remained, and still remains, unadministered. The property still remains in the hands of the administrator. The relation of trustee and *cestui que trust* was never questioned, or its existence denied, until July 11, 1868; and in such case it cannot be legally claimed that the statute of limitations began to run until the existence of such relation was denied; and, if so, the validity of the amount due on the note as a claim against the estate should have been established by the referee.

IX. Thus far this question has been considered without reference to the payment of $329.62, made April 21, 1864. If this payment was made by Charlotte Grenell as administratrix, then this claim is not barred by the statute of limitations. At this time she was acting as trustee of a fund, of which Jacob Heath, as the owner of this note, was one of the *cestuis que trust*. This fund, for some reason,

Heath *v.* Grenell.

had not been administered, but for what reason does not appear. 1. Newton M. Wardell, the son-in-law of this trustee, and acting as her agent, calls upon this *cestui que trust;* and offers him part payment upon this note, and he gives him a check on the Hungerford Bank, in her name, signed by him, and he makes the indorsement upon the note. It is conceded that the check was duly paid by the bank. Where the money came from, was not communicated to Jacob Heath. He had every reason to believe, and did believe, that this money came from a due administration of the estate. The authority of Wardwell to make the payment for her upon this note being established, and she, having made it without explanation, must take all the consequences legally resulting from it. She is estopped from setting up anything to the contrary; and if she is so estopped, then is also the estate, for which she acted. 2. Wm. Grenell died seised of the real estate from the proceeds of the sales of which this money was realized; it was subject to a mortgage; the equity of redemption was an equitable fund for the payment of debts. In case of a deficiency of legal assets, it was the duty of the administrators to apply for a sale of the real estate, for the payment of debts. In this instance no such application was made. The administrators permitted this property to be sold under the mortgage, and Charlotte Grenell bid it in. She thus became trustee, so far as this property was concerned, for the creditors of this estate, and she was in equity accountable to them for the proceeds of the sale, over and above the amount of the mortgage and costs of sale. Hence, if there was personal assets sufficient to pay all the debts, it is immaterial from what particular source the money came with which the payment was made; or if such assets were insufficient, then such payment was made out of the equitable assets, and which equity would have compelled her to apply for such purpose.

X. The reference in this case was made to determine

whether the balance due upon this note was a valid claim against the estate of William Grenell, deceased; and that there is a difference in the application of the statute of limitations here, from that in the surrogate's court, as suggested by the referee, is not perceived. A claim once admitted, the statute is suspended until its validity is denied—until the trustee holds adversely to the *cestui que trust* ; then it may commence to run. Until then the rule applies, "the possession of the trustee is the possession of the *cestui que trust*."

*Levi H. Brown*, for the respondent.

I. The findings of fact of the referee are strictly in accordance with the undisputed evidence, and the referee should, and will, be presumed to have found the further fact, that there was no evidence that Charlotte Grenell ever knew or heard of the plaintiff's alleged debt. A mere impression is no evidence of a fact. Upon those and the other facts, found and contained in the referee's report, the conclusion of law, that the claim was barred by the statute of limitations, necessarily follows. 1. That more than six years had elapsed since the payment by the defendant, January 17, 1860, at the death of Jacob Heath, of the plaintiff's intestate, May 19, 1867, is proved and found; and hence the debt was barred prior to his death. That payment was certainly no more effectual to prevent the subsequent lapse of six years creating a bar, than if William Grenell had still lived and made it, if as much so, which is not conceded. 2. The payment by Wardwell was without any knowledge or direction of the defendant, and without the knowledge of, or any specific direction from Charlotte Grenell, and therefore was neither evidence of her recognition of, or willingness to pay, that debt, or from, which either could be inferred, and both are requisite to bind the debtor himself by partial payment, and certainly there should be as strong a case made to bind the estate, heirs and co-administrator, as would be required to bind an

Heath *v.* Grenell.

individual obligor. (*See Miller* v. *Talcott,* 46 *Barb.* 167. 44 *id.* 489. 1 *Peters,* 351. *Beltzhoover* v. *Yewell,* 11 *Gill & John.,* [*Md.,*] 212. *Tippetts* v. *Heane,* 2 *Tyrw.* [*Exch.*] *R.* 772. *Arnold* v. *Downing,* 11 *Barb.* 554 *to* 557.) 3. The order of reference herein was entered January 20, 1869, and that was the commencement of the action. (*Bucklin* v. *Chapin,* 1 *Lans.* 443 *to* 449.) More than seven and a half years had elapsed since the death of William Grenell, and issuing of letters on his estate, and also since the payment by his administrator, the defendant, and hence claim barred. (*Reynolds* v. *Collins,* 3 *Hill,* 36. *Bucklin* v. *Chapin,* 1 *Lans.* 443.) 4. There being no answer or plea required in this action or reference, this defense is not only available, but meritorious; and it is the administrator's duty to interpose it without plea. (*Tracy* v. *Suydam,* 30 *Barb.* 110 *to* 116. *Bucklin* v. *Chapin, above cited, p.* 447.) 5. The burden of proof, to save the claim from the operation of the statute, was on the plaintiff. (*See Erickson* v. *Quinn, decided in this court at December term,* 1870, *as reported in Albany Law Journal, vol.* 3, *p.* 72.) Also *Porter* v. *Kimball,* decided at the same term of this court, and noted at page 131 of the same volume. 6. The plaintiff failed to show the payment by Wardwell sufficient for that purpose; as the authorities cited and referred to above, and hereafter under this point, show. There is no proof, except that Wardwell paid; and as to the payment by G. G. Grenell, the facts proved show only naked payment. (*McLaren* v. *McMartin,* 36 *N. Y.* 90.) 7. If necessary to uphold the judgment, this court, we insist, should hold that neither the payment made by G. G. Grenell, January 17, 1860, nor that made by Wardwell, if made by specific direction of Mrs. Grenell, was sufficient to stop the running of the statute, which commenced prior to the death of William Grenell, and at the date of the last payment by him, September 19, 1854, about fourteen years prior to the presentation of this claim, and commencement of this action. It has

been expressly held, that to give a partial payment any effect as against the running of the statute, it must be made by the party to be charged, or by his authority; and that a payment by an assignee under a voluntary assignment, cannot save the debt from the operation of the statute. The same rule is held as to payment by assignees in bankruptcy, and in proceedings of insolvents. (*See* 34 *Barb.* 193.) In *Bloodgood Ex'r* v. *Bruen Ex'r,* (4 *Seld.* 362,) it is held that "one who is the surviving partner and executor of his deceased partner, cannot, in either relation, by a new promise, revive against the deceased partner's estate, a debt of the copartnership." The same reasons exist, in all respects, why, from payments made by administrators, implied promises should not be allowed to operate on the demands, as against the heirs and other parties entitled to the estate in their charge, that do against holding the assignor, voluntary or involuntary, and the bankrupt, bound by a contract to be implied from partial payments made by their assignees. (*Roosevelt* v. *Mark,* 6 *John. Ch.* 266 to 292. *Stedman* v. *Feidler,* 20 *N. Y.* 446. *McIntire* v. *Morris,* 14 *Wend.* 90, 97.) See also *Lane* v. *Doty,* (4 *Barb.* 530, *and cases cited at* 535,) where it is said the law is well settled that the admissions of executors cannot save from the statute; and that was before the Code requiring written acknowledgment of the debt. In *Deyo* v. *Jones,* (19 *Wend.* 493,) reference is made to old cases in 4 *Cowen,* 493, and 15 *John.* 3, as holding that a promise of one executor binds the other; which cases so hold on the strength of the old doctrine, that one partner, after dissolution, or one of two joint contractors, could, by payment or promise, bind the other partner or contractor, which doctrine has been exploded, and this one, based on it, should be rejected.

II. The agreement for reference, and the order of reference, show that said agreement was filed and made a record of this court, and the plaintiffs are, and on the trial

Heath *v.* Grenell.

were, estopped from denying their admission made, and necessary to be made, to confer jurisdiction on this court. 1. They there admit, July 11, 1868, they " have lately presented to Graham G. Grenell, surviving administrator," &c., this claim. Charlotte Grenell died in the fall of 1864. This is an admission that its only presentation was after her death, to her survivor, which repels any inference or presumption of an earlier presentation of the claim, arising from any payment thereon. 2. It speaks of payments, but does not specify those made by Wardwell, or the defendant, and does not refer to them as any admission of the validity of the debt. 3. This agreement expressly declares that the defendant, as administrator, doubts, disputes and denies the validity, &c. Because of that denial, the case is in court. The plaintiffs are, and were, estopped from alleging, and from calling on the referee to find, the propositions contained in the case.

III. The statute provides the mode whereby a creditor may present his claim against the estate, to the administrator, and requires him to dispute and reject it within a given time; and unless he does so, it shall be, for certain purposes of administration, deemed admitted, though it may yet be in some cases contested by the heirs. See *Ganesvort* v. *Nelson,* (6 *Hill,* 389,) cited by the plaintiff on trial, and at middle of page 392, where the court say a recognition of a debt by one executor, before publishing notice for presentation of claims, is not a presentation or admission of it. In the case at bar, the payment by the defendant was less than six months after letters granted to him and Mrs. Grenell, and such notice could not have been published. The burden of proof was on the plaintiffs to show they had taken those steps as a means of avoiding the operation of the statute, and they have given no proof on the subject. The cases of *McLaren* v. *McMartin,* and *Bucklin* v. *Chapin,* and others, cited *supra,* hold that the act of payment, simply, does not prove such an admission.

Heath *v.* Grenell.

The administrator, in all cases, and for all purposes of administration, has a right to remain silent until the claim, with the proper vouchers, is presented, and until then he cannot be held to have admitted it, unless proof is made by evidence of waiver of such voucher, of which there is none here. Hence the refusal of the referee to find an unqualified admisssion of this claim, as requested, was correct. (*Robert* v. *Ditmas,* 7 *Wend.* 522.) *Bucklin* v. *Chapin, supra,* holds that although a claim is presented and the administrator unreasonably delays objecting to it, he is not precluded from interposing the statute of limitations. 1. The administrator is not such a trustee of the creditor as to preclude him from pleading this statute, any more than are trustees of a dissolved corporation. (*See Kane* v. *Bloodgood,* 7 *John. Ch.* 89 *to* 129; *Martin* v. *Gage,* 5 *Seld.* 398.) 2. The case of *Wilcox* v. *Smith,* (26 *Barb.* 316,) relied on by the plaintiff's counsel, on the trial, holds nothing adverse to any of our positions. 3. The request to find the payment by Wardwell, the act and deed of Charlotte Grenell, as administratrix, &c., was correctly refused. (*a.*) It was immaterial, if we are right in subdivisions 6, 7, point 1. (*b.*) It was wholly immaterial to the case as an abstract proposition, and also, unless accompanied by other proofs, which the plaintiff failed to make, indispensable to give such payment any effect or bearing on the question of the statute of limitations. 4. There was no evidence to warrant the finding requested, that payment by Wardwell was made with proceeds of property of the estate liable for payment of debts; no proof but there was ample personal assets to pay all debts. As administrator, Mr. G. was not trustee of the realty. No proof, but by the decree of foreclosure of the mortgage she was authorized to purchase. Indeed, no proof tending to show the surplus or advance on her purchase was not her own. 5. There was not the slightest proof that Charlotte Grenell specifically directed the payment made by Wardwell, or ever knew it was

Heath *v.* Grenell.

made, or ever knew of the existence of the note in suit; hence we cannot see how that act could have such effect, or how she could have thereby admitted or be estopped, as in the sixth and seventh requests proposed. 6. Jacob Heath died May 19, 1867. Letters of administration on his estate, to the plaintiff, May 28, 1867, and the order of reference herein, was entered January 20, 1869. Thereby the action was commenced in this court, one year and about eight months after the death of Heath and the issuing of the letters. (*Bucklin* v. *Chapin*, 1 *Lans.* 443 *to* 449.) The agreement to refer was dated and approved July 11, 1868. Whichever be regarded as the commencement of the action, more than a year after the death, and after the granting of letters, had elapsed at commencement thereof, and upon these undisputed facts the referee should, and this court will, if necessary to sustain the judgment, decide the claim barred under that short limitation. (*See Code*, § 102; 3 *R. S. 5th ed. p.* 507, § 102; *p.* 747, § 9.)

V. The statute of limitation applies to cases and proceedings in surrogate courts as elsewhere. (*McCartee* v. *Camel*, 1 *Barb. Ch.* 455 *to* 466, *approved and followed in Clark* v. *Ford, in Court of Appeals*, 34 *How.* 480. 3 *Keyes*, 478. *Partridge* v. *Mitchell*, 3 *Edw.* 180. *Warren* v. *Paff*, 4 *Bradf.* 260.)

*By the Court*, JOHNSON, J. The only question in this case is, whether the statute of limitations had run against the note in question when it was presented as a claim against the estate, of which the defendant was the surviving administrator. The note was presented as a claim by the plaintiffs shortly prior to the 11th of July, 1868, and was disputed by the defendant on the ground that it was not a valid claim against the estate. It was thereupon referred, according to the statute. The note was the joint note of the defendant and his intestate, William Grenell, dated March 19, 1853, payable six months after date, with

use.   The intestate died May 24, 1859, and had made pay-
ments of interest on the note up to September 16, 1854,
which were indorsed thereon.   Letters of administration
were granted to the defendant and the widow of the intes-
tate, August 11, 1859.   On the 17th of January, 1860,
the defendant, as one of the administrators, paid and in-
dorsed upon the note $36.37, a portion of which was assets
of the estate.   This payment was made before the statute
had run against the note.   Six years had not then elapsed
since the last payment of interest by the intestate.   It may
be assumed, I think, that this payment saved the obliga-
tion from the operation of the statute up to that time,
within the case of *McLaren* v. *McMartin*, (36 *N. Y.* 88.)
It is true that, so far as appears from the case, the pay-
ment was the act of the defendant, alone, without the
knowledge or consent of the other administrator.   But
the debt was then due, and a valid demand against the
estate, and it was not only his right, but his duty, to make
the payment from assets in his hands.   It would, I think,
have been different had the statute then run against the
note.   The question of the right of one administrator to
revive and restore a stale demand, would have arisen in
that case, and this I think cannot be done either by the
promise, or the act, of payment, of one of several admin-
istrators, according to the rule as now well settled.

   The important question, therefore, is, whether the pay-
ment subsequently made by the agent of Mrs. Charlotte
Grenell, on the note in question, had the effect to save the
note from the operation of the statute up to that time.
This payment was made on the 21st of April, 1864, by the
agent, Wardwell, and by him indorsed on the note, and
was of the amount of $379.62.   The fund out of which it
was made was not assets belonging to the estate, but be-
longed to Mrs. Grenell in her own right.   She had about
$1000, which she had obtained from a sale made by her
of certain real estate which she had bid off at a foreclosure

Heath *v.* Grenell.

sale, upon a mortgage given by the intestate, on lands owned by him, over and above the amount paid by her on her purchase. This amount she directed Wardwell, her son-in-law, to pay on her husband's debts, without specifying any debts in particular. He took the fund and paid it out on the indebtedness of the intestate, paying on the note the amount before specified. It does not appear that Mrs. Grenell even knew that this amount had been paid upon the note, or that she ever knew of the existence of the note. Upon this state of facts, it is obvious, as the referee has found, that in making this payment, even had she directed it to be made specifically, she was not acting in her capacity of administrator. It was not funds of the estate, and any payment made by her with her own money, could not bind the estate, or affect it any way, any more than if it had been the act of a stranger. She was a stranger to this demand, except in her capacity of administrator, and in the lawful use of the assets of the estate. It could not be construed into a promise, or as indicating an intention, to revive or continue the demand against the estate. All that could be inferred from it, legitimately, was a willingness on her part to appropriate the amount she had thus realized from the purchase, to the payment of the demand, whether still in force or not. But she gave no specific direction to pay this demand, or any part of it. The agent, in making the partial payment, exercised his own discretion in distributing the fund amongst the different claims; and had it been assets of the estate, even, I do not think the general direction could be construed into a promise or undertaking, or an intention to continue this particular demand. But as it was not the assets of the estate, and she was not acting in her representative capacity in making or ordering the payment, it can have no bearing against the estate.

There is nothing to show that as administrator she intended to save the demand from the operation of the

statute. (*McLaren* v. *McMartin, supra. Shoemaker* v. *Benedict,* 1 *Kern.* 185. *Winchell* v. *Hicks,* 18 *N. Y.* 560. *Pickett* v. *King,* 34 *Barb.* 195. *Deyo* v. *Jones,* 19 *Wend.* 493. *Roscoe* v. *Hall,* 7 *Gray,* 275. *Clarke* v. *Dutcher,* 9 *Cowen,* 674.)

The referee was right, therefore, in his conclusion of law, that this payment was not such a payment as would prevent the running of the statute.

The doctrine of trustees and *cestuis que trust,* which the appellant's counsel seeks to apply to the case, is not applicable. It is simply a question of debtor and creditor, and whether as between them the statute has run against the obligation. (*Paff* v. *Kinney,* 1 *Bradf.* 1.)

The demand had never been presented as a demand against the estate, until it was presented by the plaintiffs. This is plain from the fact merely of its presentation at the time it was disputed, and the contrary is not shown. Had it been previously presented and allowed, there was no necessity for a new presentation, or propriety in making it. When it was presented, the administrator had a perfect right to dispute it, as he did, and the question was thus raised as to whether it was then a valid subsisting claim against the estate.

The appellant's counsel contends that the partial payment made by the defendant as administrator, upon the note, from the assets of the estate in his hands, on the 17th of January, 1860, had the same effect, and placed the demand in the same situation, in which it would have been placed, had it been presented in pursuance of the notice provided for by 2 *R. S.* 88, § 34, and allowed by the administrators.

But this is not so. Presentation and allowance under these provisions of the statute are quite different from the voluntary partial payment by one administrator, from assets in his hands, not only in the form and nature of the act, but in its legal consequences. The latter is only evidence of a new promise, from the date of which the six

The former is a proceeding under the statute by which a claim presented and allowed may be deemed as adjusted, and its proportional share of the assets appropriated to its payment.

No question is raised as to the right of the defendant to avail himself of the defense of the statute of limitations on this trial, in case the statute had run against the demand.

The judgment is right, and must be affirmed, with costs.

The presiding justice, having heard the case at special term, did not sit.

[FOURTH DEPARTMENT, GENERAL TERM, at Syracuse, November 18, 1871. *Johnson* and *Talcott*, Justices.]